IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KEVIN B. DAMMEYER,<br><br>       Plaintiff,<br><br>  vs.<br><br>SEA SPORT CRUISES, INC. d.b.a.<br>PACIFIC WHALE FOUNDATION ECO<br>ADVENTURES, DOE DEFENDANTS<br>1-25, DOE CORPORATIONS, 1-25,<br>DOE GOVERNMENT AGENCIES 1-25,<br>DOE PARTNERSHIPS 1-25,<br><br>       Defendants. | Civil No. 22-00442 MWJS-KJM<br><br>ORDER DENYING PLAINTIFF<br>KEVIN B. DAMMEYER'S MOTION<br>FOR SUMMARY JUDGMENT AND<br>GRANTING IN PART AND<br>DENYING IN PART DEFENDANT<br>SEA SPORT CRUISES, INC.'S<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT |

## INTRODUCTION

In this maritime action, Plaintiff Kevin B. Dammeyer sues for leg injuries he sustained after slipping and falling in a ship's engine room. Dammeyer and his employer, Defendant Sea Sport Cruises, Inc. (or "Sea Sport" for convenience), each now move for partial summary judgment as to certain claims.

The parties' motions fall short for the same general reason: there remain genuine disputes of material fact as to the claims on which they seek judgment as a matter of law. For that reason, the Court DENIES Dammeyer's motion and DENIES IN PART Sea Sport's motion. Because Dammeyer has conceded one aspect of Sea Sport's motion, however, that motion is GRANTED IN PART.

In addition to these motions for partial summary judgment, Sea Sport contends that Dammeyer's counsel has violated certain Local Rules and, consequently, should be ordered to pay attorney's fees and costs. The Court agrees that Dammeyer's counsel violated the Local Rules in certain respects. The Court DENIES Sea Sport's request for attorney's fees and costs, however, because it does not find on the current record that Dammeyer's counsel acted in bad faith.

## BACKGROUND

### A.    Dammeyer's Claims

Dammeyer's complaint advances multiple claims for relief, but only two of his claims are at issue on summary judgment: (1) unseaworthiness and (2) failure to pay maintenance and cure.[1] In these claims, Dammeyer contends that Sea Sport has breached its maritime obligations to provide a seaworthy vessel and to support injured seamen during their recovery from injuries sustained while in service.

The claims arise out of injuries Dammeyer allegedly sustained after slipping and falling on a ship deck on or about October 16, 2019. As alleged in the complaint, Dammeyer was working as a captain of the Vessel Ocean Quest (the "Vessel") at the time of the incident. ECF No. 1, at PageID.5 (Compl. ¶¶ 9-10). The Vessel is a commercial recreational excursion vessel owned and operated by

---

[1]    The other claims are (1) Jones Act negligence, (2) negligent and reckless infliction of emotional distress, and (3) respondeat superior. ECF No. 1, at PageID.6-10 (Compl. ¶¶ 17-21, 26-31).

Sea Sport. *Id.* at PageID.3-5 (¶¶ 7-8). At the time Dammeyer was injured, the Vessel had just returned from an excursion and docked at Lahaina Boat Harbor. *Id.* at PageID.5 (¶ 11). An engineer (or mechanic) on the Vessel informed Dammeyer that there was a fuel leak in the starboard engine deck. *Id.* at PageID.5-6 (¶ 12). Dammeyer inspected the engine room and discovered what he alleges were "multiple inches" of fuel on the floor. *Id.* at PageID.6 (¶ 13). While investigating the source of the fuel leak, Dammeyer stepped on the Vessel's "exhaust/muffler manifold,"[2] which he alleges had a "well-worn" non-slip strip and "some fuel/liquid" on it. ECF No. 54-2, at PageID.284 (Decl. of Pl. ¶ 10). Dammeyer slipped and fell, "resulting in a protruding steel hose-clamp rod . . . penetrating his lower left leg." ECF No. 1, at PageID.6 (Compl. ¶ 14). Dammeyer alleges that he sustained a "very large and deep laceration to his lower left leg and injury to his right knee." *Id.*

### B.   The Parties' Motions for Partial Summary Judgment

Dammeyer's motion seeks summary judgment on his unseaworthiness claim. He argues that the Vessel's engine room and its equipment were not reasonably fit for their intended purpose as a matter of law because the muffler had a well-worn non-slip strip on it and a protruding hose clamp, and there was a fuel

---

[2]   Sea Sport says the correct term is a "water-lift muffler." ECF No. 66, at PageID.442. To avoid unnecessarily resolving a semantic dispute, the Court refers to the equipment as a "muffler."

leak in the engine room, which created an unreasonably slippery condition. ECF No. 53-1, at PageID.273-74. In support of these factual propositions, Dammeyer relies largely on his own declaration. *See* ECF No. 54-2. Sea Sport opposes the motion, arguing primarily that the evidence does not establish two of the elements of unseaworthiness: unfitness and proximate causation. ECF No. 66, at PageID.441-49. Sea Sport also raises arguments challenging the admissibility of various exhibits on which Dammeyer's motion sought to rely.

For its part, Sea Sport moves for summary judgment on Dammeyer's claim for failure to pay maintenance and cure. *See* ECF No. 51. Sea Sport argues there is no convincing proof of a causal connection between Dammeyer's right knee condition and the October 16, 2019 incident, and that Dammeyer already reached maximum medical cure as to his left leg laceration. ECF No. 51-1, at PageID.192. To establish that there is no genuine dispute of material fact on causation as to the right knee, Sea Sport relies on the opinion of Dammeyer's treating physician, Charles Soma, M.D., as well as a retained expert, James F. Scoggin, III, M.D., who both opined that Dammeyer's right knee injury is not causally connected to the October 16, 2019 incident but, rather, is a degenerative joint disease consistent with Dammeyer's age. *Id.* at PageID.196-200.

In response, Dammeyer concedes that his left leg already reached maximum medical cure, but he maintains that genuine disputes of material fact exist

regarding the causal connection between his right knee injury and service as a seaman.  ECF No. 64, at PageID.353-54.  To substantiate that connection, Dammeyer principally relies on the opinion of his own retained expert, Scott McCaffrey, M.D., who opined that Dammeyer sustained structural damage to his right knee while climbing out of the engine room on October 16, 2019, and "subsequently developed mechanical knee pain due to asymmetric weight bearing" and compensatory inflammation.[3]  *Id.* at PageID.360; ECF No. 65-3, at PageID.377-81, 391-92.  Sea Sport counters that Dammeyer's expert's opinion is inadmissible and, in any case, is insufficient to create a genuine dispute of material fact on causation because Dammeyer improperly relies on Dr. McCaffrey's opinion to prove facts for which he is not a percipient witness, and because the opinion of the treating physician controls as a matter of law.  ECF No. 68, at PageID.487-90.

The Court held a hearing on the parties' motions for partial summary judgment on March 13, 2024.  ECF No. 78.

---

[3]    Dr. McCaffrey represented that he developed his opinion after physically examining Dammeyer and reviewing Dr. Scoggin's report and other records.  ECF No. 65-3, at PageID.376; ECF No. 65-4, at PageID.406-07.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where a movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes that showing, the burden then shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). In asserting whether a fact is genuinely disputed, a party must cite to "particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec.*, 475 U.S. at 587; *see also Barnes v. Sea Hawaii Rafting, LLC*, 889 F.3d 517, 538 (9th Cir. 2018).

<u>**DISCUSSION**</u>

**A.     Dammeyer Is Not Entitled to Judgment as a Matter of Law on Unseaworthiness**

This Court first addresses Dammeyer's motion for summary judgment on his unseaworthiness claim. For the reasons set forth below, the Court concludes that Dammeyer is not entitled to judgment as a matter of law on that claim.

The doctrine of unseaworthiness is a type of strict liability under which a shipowner owes an absolute duty to furnish a seaworthy ship to seamen. *Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F.3d 658, 664 (9th Cir. 1997) (citing *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960)); *see also Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94-95 (1946). "A seaworthy ship is one reasonably fit for its intended use." *Ribitzki*, 111 F.3d at 664 (citing *Mitchell*, 362 U.S. at 550). To prove unseaworthiness, Dammeyer must establish four elements: "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries." *Id.*

Here, Sea Sport disputes only the last two elements of unseaworthiness. *See* ECF No. 66, at PageID.441. The Court considers each in turn.

1.    Under the third element of unseaworthiness, a seaman is entitled not to a perfect work space, but to one that is reasonably fit for its intended use. *See*

*Ribitzki*, 111 F.3d at 664-65.  When the issue is slipperiness, a seaman is entitled to a work space that is not *unreasonably* slippery, such that an area of the ship is no longer reasonably fit for its intended use by the crew.  *Id.* (citing *Lieberman v. Matson Navigation Co.*, 300 F.2d 661, 662 (9th Cir. 1962)).  The mere temporary presence of water on a ship deck does not constitute unseaworthiness, for the shipowner is not an insurer.  *Lieberman*, 300 F.2d at 662.  And a comparable analysis—calling for a consideration of reasonableness in relation to intended purpose—applies to other allegedly unseaworthy conditions.

In this case, Dammeyer argues there were three unfit conditions in the engine room:  (1) the "well-worn" non-slip strip; (2) the protruding hose clamp; and (3) the "fuel on the exhaust/muffler manifold."  *See* ECF No. 53-1, at PageID.273-74.  As proof of those unfit conditions, Dammeyer relies almost exclusively on his declaration.  His declaration states that the Vessel's mechanic informed him of a "significant" fuel leak in the engine room, and that when Dammeyer went to investigate it, he entered the room "by stepping on the exhaust/muffler manifold which had a well-worn yellow colored non-slip strip . . . and . . . some fuel/liquid on it."  ECF No. 54-2, at PageID.284.  Dammeyer's foot slid, driving his leg "down between the muffler manifold and riser." *Id.*  A "hose clamp on the exhaust manifold with around 2.5 inches of excess metal, like a rod, projecting past its tensioning screw" entered his left leg.  *Id.*

Sea Sport apparently does not dispute, at least at this stage, that there was liquid on the muffler, but it argues that the "mere momentary presence" of oil or another unidentified liquid does not "in and of itself render the vessel unseaworthy." ECF No. 66, at PageID.443. And it argues that Dammeyer's conclusory statements about the conditions of the non-slip strip and hose clamp are similarly insufficient without evidence about what conditions would be reasonable under the circumstances. *Id.* at PageID.445.

The Court agrees with Sea Sport that Dammeyer's evidence does not conclusively establish this element. In essence, Dammeyer asks this Court to draw a number of inferences in his favor about, among other things, where the liquid on the muffler came from; what type of liquid it was; whether the "significant" amount of fuel or other liquid was unusual, not an ordinary incident to working in a ship's engine room; whether the protruding hose clamp was unreasonable; and whether the non-slip strip was unreasonably worn down. *See Pinto v. States Marine Corp. of Del.*, 296 F.2d 1, 3-8 (2d Cir. 1961) (affirming the district court's jury charge that to find the vessel unseaworthy, the jury must find that the alleged condition of oil or grease at the time of the plaintiff's slip and fall was not a "phase in the normal progress of work in and about the engine room, but that oil and grease was permitted to accumulate in sufficient quantity" to render the vessel unseaworthy). It may well be that a reasonable factfinder could draw those

inferences on this record.  *See, e.g.*, *Ribitzki*, 111 F.3d at 665 (reversing the district court's grant of summary judgment to the defendant on unseaworthiness because the plaintiff produced evidence that the pit room was cramped and slippery, which was sufficient to permit a reasonable jury to find the room was unfit for the task of cleaning the shale pit).  But it would not be appropriate for the Court to do so at this stage.  Because Sea Sport is the nonmoving party as to unseaworthiness, the Court must draw all reasonable inferences in its favor—not Dammeyer's.  *See Matsushita Elec.*, 475 U.S. at 587.

Viewing the evidence in the light most favorable to Sea Sport, genuine disputes of material fact remain regarding whether any of the three conditions alleged by Dammeyer rendered the equipment unfit for its intended purpose.

2.   To satisfy the fourth element of unseaworthiness, Dammeyer would also have to establish that the unfit condition proximately caused his injuries as a matter of law.  *See Ribitzki*, 111 F.3d at 664.  Proximate cause "is established by showing that the unseaworthy condition was a substantial factor in causing the injury."  *Id.* at 665 (citing *Faraola v. O'Neill*, 576 F.2d 1364, 1366 (9th Cir. 1978)).

Sea Sport contends that a genuine dispute of material fact remains as to proximate causation because Dammeyer has not established that any of the alleged conditions were unfit as a matter of law; hence, the Court cannot conclude that any specific unseaworthy condition was a substantial factor in causing his injuries.

Viewing the evidence in the light most favorable to Sea Sport, the Court agrees with Sea Sport that a genuine dispute of material fact remains regarding whether an unseaworthy condition—whether it be the fuel or other liquid, hose clamp, or non-slip strip—was a substantial factor in causing Dammeyer's injuries.

Because the Court cannot conclude that Dammeyer has established the elements of unfitness and proximate causation as a matter of law, the Court denies Dammeyer's motion for summary judgment on his unseaworthiness claim.

**B.    Sea Sport Is Entitled to Judgment as a Matter of Law with Respect to Maintenance and Cure of Dammeyer's Left Leg, but Not His Right Knee**

Next, the Court considers Sea Sport's motion for summary judgment on maintenance and cure. For the reasons explained below, the Court concludes that Sea Sport is entitled to judgment as a matter of law on maintenance and cure of Dammeyer's left leg, but not his right knee.

1.    As to Dammeyer's right knee, the question is whether the opinion of Dammeyer's retained expert, Dr. McCaffrey—who opined that Dammeyer's right knee injury is causally connected to his service as a seaman—is sufficient to create a genuine dispute of material fact on the issue of causation.

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001) (citing

11

*Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527-28 (1938)).  To establish entitlement to maintenance and cure, a "seaman need only prove that he 'bec[ame] ill or . . . injured while in the service of the ship.'"  *Barnes*, 889 F.3d at 538 (quoting *Vella v. Ford Motor Co.*, 421 U.S. 1, 3 (1975)).  Under that broad standard, the shipowner's duty to pay maintenance and cure is generally not restricted to cases in which the seaman's employment is the cause of the injury. *Calmar*, 303 U.S. at 527.  It "encompasses any illness or injury which occurred, was aggravated, or manifested itself while the seaman was in the ship's service." *Davis v. Brunsman*, 516 F. Supp. 3d 1185, 1196 (D. Or. 2021) (cleaned up). Where a seaman's "illness or injury manifests itself *after* conclusion of [their] employment with the shipowner," however, they are "not entitled to recover for maintenance and cure absent convincing proof of causal connection between the injury or illness and the seaman's service."  *Id.* (emphasis added) (quoting *Minks v. AEP River Operations, LLC*, No. 09-cv-543, 2012 WL 1142932, at *4 (S.D. Ohio Apr. 5, 2021)).

In this case, the record shows that Dammeyer's service as a seaman has ended, but it does not clarify *when* that service ended.  The written submissions do not supply the answer.  And counsel for Dammeyer could not provide the answer at the hearing on the parties' motions.  Accordingly, because Dammeyer has not shown otherwise, the Court must assume that when Dammeyer's right knee injury

was first noted in July 2020—nine months after he injured his left leg on the Vessel—Dammeyer was no longer in service as a seaman. It follows that Dammeyer must meet the "convincing proof of causal connection" standard, and indeed, both parties agree this standard should apply here. *See id.*; ECF No. 64, at PageID.359-60.

The parties disagree as to whether Dammeyer has provided sufficient evidence to meet that standard. Sea Sport contends that Dammeyer has not presented such proof. ECF No. 51-1, at PageID.204-05. As a threshold matter, Sea Sport argues that the Court should not consider Dr. McCaffrey's expert reports at all, on the ground that Dammeyer has not adequately authenticated them. For reasons discussed in Part C.1. below, the Court does not agree and therefore will consider Dr. McCaffrey's reports in evaluating Sea Sport's motion.

Turning to the substance of Dr. McCaffrey's reports, Sea Sport argues that Dr. McCaffrey's expert reports are insufficient to create a genuine dispute of material fact because Dammeyer cannot rely on an expert opinion to establish facts to which the expert was not himself a percipient witness. As Sea Sport points out, in his expert reports, Dr. McCaffrey finds that Dammeyer's right knee injury is related to his service on the ship because while exiting the engine room on October 16, 2019, Dammeyer "twisted his right knee and banged it hard on a rung of the ladder." ECF No. 65-3, at PageID.381. But, as Sea Sport also points out,

Dammeyer did not submit any other evidence, whether from himself or any other witness, to establish that Dammeyer twisted and banged his right knee on the Vessel as Dr. McCaffrey had assumed. And Sea Sport is correct that expert reports cannot be used to assert facts on a summary judgment motion, as experts are not fact witnesses. *See Hyer v. City & Cnty. of Honolulu*, 654 F. Supp. 3d 1111, 1120 (D. Haw. 2023) (citing Fed. R. Evid. 602). The upshot is that Dammeyer cannot create a genuine dispute of fact on causation by relying on Dr. McCaffrey's opinion that the twisting and banging of Dammeyer's right knee caused his injury, because Dammeyer has not adequately established a genuine dispute of fact as to whether any twisting or banging of that knee ever occurred.

But Dr. McCaffrey provided a second basis for his opinion that Dammeyer's right knee injury was causally connected to the October 16, 2019 incident: Dammeyer "developed mechanical knee pain due to asymmetric weight bearing on [his] left leg and compensatory inflammation (with increased weight bearing) on the right lower extremity." ECF No. 65-3, at PageID.378. It is undisputed that Dammeyer's left leg was injured during his service as a seaman. Dr. McCaffrey's opinion on this point therefore provides a sufficient basis—at least for the purposes of surviving summary judgment—to causally connect Dammeyer's left leg injury with the subsequent development of his right knee pain.

14

Sea Sport offers one final contention.  It argues, in effect, that there is a hierarchy of medical experts, and that a treating physician must always prevail over a retained expert as a matter of law.  In this case, Dammeyer's treating physician, Dr. Soma, appears to have concluded that Dammeyer's right knee injury was not caused by the incident aboard the Vessel on October 16, 2019.  Sea Sport contends that Dr. Soma's opinion should control as a matter of law.  ECF No. 68, at PageID.488-90.

But while a treating physician's opinion is surely helpful—and, at the trial stage, may well prove dispositive as a matter of fact—the Court cannot say it invariably controls as a matter of law in these circumstances.  For one thing, while a shipowner is required to unequivocally prove that maximum cure has been reached, the case law does not suggest that a treating physician's opinion is legally conclusive in every case, as opposed to being likely factually persuasive in the typical case.  *See Davis*, 516 F. Supp. 3d at 1196 ("Where conflicting medical opinions exist, a shipowner will *likely* not meet the unequivocal evidence standard." (emphasis added) (citing *Hedges v. Foss Mar. Co.*, No. C10-5046, 2015 WL 402809, at *2 (W.D. Wash. Jan. 29, 2015))).  For another, here, the issue is not whether Dammeyer's right knee has reached maximum medical cure, as was the case in each of the precedents Sea Sport cites in support of its legal contention. The dispute in this case is, instead, whether Dammeyer was ever entitled to

15

maintenance and cure of his right knee at all. And even if a treating physician's opinion were conclusive on the question of whether maximum medical cure has been reached, the Court is not persuaded—and Sea Sport has identified no authorities suggesting—that a treating physician's opinion should be conclusive on the question of what caused a seaman's injuries in the first place.

A well-settled principle therefore controls the issue presented here: Weighing the credibility of conflicting expert witness testimony is the province of the trier of fact. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000). Dr. McCaffrey opined that Dammeyer's right knee injury was caused in part by asymmetric weight bearing due to Dammeyer's left leg injury. If a factfinder were to credit this testimony, then Dammeyer would establish a causal connection to his service on the Vessel, given that there is no dispute that his left leg injury resulted from that service. At the summary judgment stage, it does not matter that a reasonable factfinder might not be *likely* to reach that conclusion. The only question is whether, viewing the evidence in the light most favorable to Dammeyer, a reasonable factfinder *could* credit the opinion of Dammeyer's retained expert over that of his treating physician and Sea Sport's own retained expert. The Court concludes that, on this record, a reasonable factfinder could so find. *See, e.g.*, *Cabading v. Port of Portland*, 598 F. Supp. 3d 1009, 1021-22 (D. Or. 2022) (declining to reject the opinions of a crew member's

16

experts as "detached" from the case where there was a reasonable factual dispute between the parties' experts, which could not be resolved on summary judgment). For that reason, the Court denies Sea Sport's motion as to maintenance and cure of Dammeyer's right knee.

2.   As for Dammeyer's left leg injury, Dammeyer concedes that it reached maximum medical cure as of February 23, 2021, and that Sea Sport paid for the related medical expenses.  *See* ECF No. 65, at PageID.364 (Pl.'s Concise Statement of Facts ¶¶ 3-8); ECF No. 52, at PageID.209-10 (Def.'s Concise Statement of Facts ¶¶ 3-8).  A vessel's obligation to furnish maintenance and cure to a seaman who is injured during service continues only until the seaman achieves maximum recovery—"that is, until the seaman is well or his condition is found to be incurable." *Permanente S.S. Corp. v. Martinez*, 369 F.2d 297, 298 (9th Cir. 1966).  Thus, Sea Sport's obligation to furnish maintenance and cure of Dammeyer's left leg ended when the laceration reached maximum medical cure. Dammeyer does not allege that any amount of maintenance or cure related to his left leg injury remains unpaid by Sea Sport.  The Court therefore grants summary judgment to Sea Sport as to maintenance and cure of Dammeyer's left leg.

### C.    Sea Sport's Evidentiary Objections and Attorney's Fees and Costs

There remain two matters to address:  (1) Sea Sport's evidentiary and procedural objections to some of Dammeyer's pleadings and evidence, and (2) whether attorney's fees and costs should be awarded to Sea Sport.

1.    The most significant evidentiary objection concerns Dr. McCaffrey's expert reports.  *See* ECF Nos. 65-3 & 65-4.  As noted above, Sea Sport argues that Dammeyer has failed to adequately authenticate those reports, and that the Court therefore should not consider them in evaluating Sea Sport's motion for summary judgment.  ECF No. 68, at PageID.485-87.  Sea Sport's contention is that Dr. McCaffrey himself should have submitted a declaration, and that it was not sufficient for Dammeyer's counsel to represent that the reports were true and accurate in a declaration of his own.

Rule 56(c)(2), as amended on December 1, 2010, provides that "[a] party may object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence*."  Fed. R. Civ. P. 56(c)(2) (emphasis added).  The Advisory Committee notes explain that if a party does so object, "[t]he burden is on the proponent to show that the material is admissible as presented *or to explain the admissible form that is anticipated*."  *Id.* advisory committee's note to 2010 amendment (emphasis added).

The question, therefore, is not whether Dammeyer has submitted Dr. McCaffrey's reports in a manner that is currently admissible, but rather whether he has provided enough to show that the contents of Dr. McCaffrey's reports would be admissible at trial.  The Court concludes that under the circumstances of this case, Dammeyer's counsel has met his burden.  Dammeyer's counsel retained Dr. McCaffrey; authorized Dr. McCaffrey to examine Dammeyer, *see supra* note 3; and then submitted a declaration attesting to the authenticity of the reports received from the expert he had retained.  Dr. McCaffrey's reports, moreover, are addressed to Dammeyer's counsel, and contain confirmation that Dammeyer's counsel was personally aware of Dr. McCaffrey's interview and physical examination of his client.  ECF No. 65-3, at PageID.376 ("Dear Mr. Moore . . . . As you know I interviewed your client on June 29th, 2021, via teleconference and performed a physical examination of him in your Law Office . . . . In addition, I have reviewed the medical records you provided . . . .").  These facts are enough to support the conclusion that the submitted reports are "true and correct" copies of the reports Dr. McCaffrey prepared, as Dammeyer's counsel represented in his submitted declaration.  ECF No. 65-7, at PageID.421.  And Dammeyer's counsel confirmed that he intends to call Dr. McCaffrey to testify at trial—thus amply demonstrating the admissible form of evidence that is anticipated.

19

Sea Sport has not cited any authority to support the conclusion that the

above circumstances are insufficient to put expert reports properly before the Court

at the summary judgment stage.  The case law, instead, suggests that where "no

substantive doubt has been raised" that a proffered document is authentic, "and the

circumstantial evidence" suggests the document is "in fact authentic," the Court

may consider the document to be sufficiently "authenticated" for summary

judgment purposes.  *Shuffle Master, Inc. v. MP Games LLP*, 553 F. Supp. 2d 1202,

1209-10 (D. Nev. 2008).  Here, Sea Sport has not raised any "substantive doubt" as

to the authenticity of Dr. McCaffrey's reports, "and the circumstantial evidence"

suggests that the reports are "in fact authentic."  *Id.*  The Court therefore overrules

Sea Sport's objection to considering Dr. McCaffrey's reports at the summary

judgment stage.

As to the other items Sea Sport challenges—a claims adjuster letter, ECF

No. 65-1, medical records, ECF Nos. 65-2 & 65-5, various amended and

supplemented filings that Dammeyer made without seeking leave, ECF Nos. 66,

74-75, and Coast Guard reports and photographs attached to Dammeyer's

summary judgment motion, ECF Nos. 54-3 to 54-6—the Court need not make

rulings because none of these filings or exhibits are material to the Court's rulings on the summary judgment motions.[4]

2. The final matter to resolve is that of attorney's fees and costs. Sea Sport initially requested reasonable attorney's fees and costs incurred in both (1) responding to Dammeyer's amended and supplemental materials filed without leave of Court, ECF No. 66, at PageID.449-50, and (2) preparing its motion for summary judgment as to maximum medical cure of Dammeyer's left leg because Dammeyer failed to sign the stipulation on that undisputed issue, ECF No. 68, at PageID.483-84 n.1, 491-92.

At the hearing on the summary judgment motions, Sea Sport withdrew its request for attorney's fees and costs related to Dammeyer's motion and

---

[4]     That said, the Court agrees with Sea Sport that Dammeyer was required to seek leave before filing his amended and supplemented submissions. *See* LR7.2 ("No further or supplemental briefing shall be submitted without leave of court."); LR56.1(h) ("Supplemental affidavits and declarations may only be submitted with leave of court."). As indicated at the hearing, the Court admonishes counsel for Dammeyer for filing his amended and supplemented concise statement of facts in support of his motion, ECF No. 63, without leave of court in violation of the Local Rules, and reminds the parties that it expects the Local Rules to be followed at all times. The Court declines, however, to go so far as to deny Dammeyer's motion for summary judgment on the grounds that it is procedurally defective, as Sea Sport requests. As for Dammeyer's other amended submissions—his amended reply memorandum and amended further concise statement of facts in support of his reply, ECF Nos. 74 & 75—at the hearing, counsel for Dammeyer explained that he had reached out to courthouse staff before filing those materials and was instructed to do so. Given this proffered explanation, the Court concludes Dammeyer did not violate the Local Rules with respect to those amended filings.

unauthorized filings.  ECF No. 78.  The Court appreciates Sea Sport's reasonable concession on this point and, accordingly, does not sanction Dammeyer's counsel for his violation of Local Rules 7.2 and 56.1(h).

With that concession, the Court only considers attorney's fees and costs as related to Sea Sport's motion.  Dammeyer does appear to have violated the Local Rules by not properly handling the pre-filing conference, required by Local Rule 7.8, on Sea Sport's motion for partial summary judgment.[5]  *See* LR7.8 (requiring counsel to meet and confer before filing a motion and to discuss "the substance of the contemplated motion and any potential partial or complete resolution"); *see also* LR1.3 (directing that the Local Rules be employed by the parties "to promote the just, efficient, and economical determination of every action and proceeding").

This violation of the Local Rules supports an award of attorney's fees and costs, but it is not sufficient standing alone.  "Generally, attorneys' fees are not available in admiralty absent bad faith."  *Louis v. Atlantis Submarines, Inc.*, No. 97-cv-01194, 1999 WL 641793, at *3 (D. Haw. Feb. 8, 1999) (citing *Burroughs v.*

---

[5]      According to Sea Sport, at the parties' pre-filing conference under Local Rule 7.8, Dammeyer's counsel agreed that Dammeyer's left leg injury had reached maximum medical cure as of February 23, 2021 (meaning that no further maintenance and cure was needed), and Sea Sport therefore circulated a stipulation to that effect.  ECF No. 51, at PageID.186 n.1.  But Dammeyer's counsel did not sign the stipulation.  *Id.*  As a result, Sea Sport filed a motion for partial summary judgment on, among other things, this issue.  Then, in his opposition, Dammeyer conceded the fact on which he had earlier agreed (but then failed) to stipulate—that his left leg has already reached maximum medical cure.  *See* ECF Nos. 64 & 66.

*Bd. of Trs.*, 542 F.2d 1128, 1131-32 (9th Cir. 1976)); *see also Southworth Mach.*

*Co. v. F/V Corey Pride*, 994 F.2d 37, 41 (1st Cir. 1993) (explaining that under

"federal maritime law," "the parties pay their own fees absent bad faith or

oppressive litigation tactics").  At the hearing on the motions, Dammeyer

explained that he understood the parties to be still negotiating the details of the

stipulation when Sea Sport filed its motion.  In light of this proffered explanation,

and given that there has been no prior finding of a violation of the Local Rules

against Dammeyer's counsel, the Court does not find that Dammeyer's counsel

acted in bad faith.  And, for that reason, the Court declines to make the requested

award of attorney's fees and costs.

## **<u>CONCLUSION</u>**

Plaintiff Kevin B. Dammeyer's Motion for Summary Judgment is DENIED.

Defendant Sea Sport Cruises, Inc.'s Motion for Partial Summary Judgment is

GRANTED IN PART and DENIED IN PART.  Finally, Sea Sport Cruises, Inc.'s

request for attorney's fees and costs is DENIED.

//

//

//

//

//

IT IS SO ORDERED.

DATED:  March 22, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 22-00442 MWJS-KJM; *Kevin B. Dammeyer v. Sea Sport Cruises, Inc. et al.*; ORDER
DENYING PLAINTIFF KEVIN B. DAMMEYER'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART DEFENDANT SEA SPORT CRUISES, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

24